IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

**v.**                              **Criminal No.** 15-660 (FAB)

[1] AXEL APONTE-GARCIA,
[2] ENRIQUE COSTAS-TORRES,
[3] GUILLERMO CRUZ-GARCIA,
[4] EDWIN IZQUIERDO-MONTANEZ,

**Defendants.**

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendant Guillermo Cruz-García ("Cruz")'s motion seeking: (1) the dismissal of all charges contained in the Superseding Indictment dated April 14, 2016 (the "Superseding Indictment"), or, in the alternative, (2) the disclosure or *in camera* review of grand jury minutes. (Docket No. 175.) Also before the Court is defendant Cruz's motion for a bill of particulars. (Docket No. 184.) Having considered the substance of those motions, as well as the content of the Government's opposition, (Docket No. 194), the Court **DENIES** both motions.

## BACKGROUND

On October 21, 2015, a Federal Grand Jury indicted defendants Axel Aponte-Garcia ("Aponte"), Enrique Costas-Torres ("Costas"), Cruz, and Edwin Izquierdo-Montañez ("Izquierdo") (collectively, the "defendants") with one count of Conspiracy to Defraud the United

States (18 U.S.C. § 371), one count of Conspiracy to Defraud by Wire (18 U.S.C. §§ 1343, 1349), fourteen counts of Fraud by Wire (18 U.S.C. § 1343 and 2), and seven counts of Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1) and 2).  (Docket No. 3.)  It is alleged that, from March 2007 through 2009, the defendants conspired to defraud the United States and the National Guard Bureau of money and property.  The conspiracy purportedly involved the fraudulent acquisition and sharing of bonus payments that were being offered - through the National Guard Recruiting Assistance Program (the "Program") - to qualified Army National Guard soldiers, officers, and retirees who recruited civilians to serve in the National Guard.  Id. at p. 2.  These bonuses were allegedly paid out to the defendants by Document and Packaging Broker, Inc. ("Docupak"), which had contracted with the National Guard Bureau to administer the Program.  Id.  The Program bonus payments at issue here, which were in excess of $5,000, were transferred by interstate wire from Docupak's accounts in Alabama to defendant Aponte's various accounts in Puerto Rico.  Id. at p. 5.

    In February 2016, the defendants filed several motions to dismiss all charges contained in the Indictment.  (Docket Nos. 63, 67 & 72.)  Collectively, these motions assert that complete dismissal is appropriate because:  (1) the statute of limitations has lapsed, (2) pre-indictment delay has violated due process, and (3) criminal liability for recruitment-related conduct cannot

attach to soldiers following orders to recruit. Defendant Cruz also filed his first motion for a bill of particulars, which seeks to compel the Government to provide more specific allegations of Cruz's criminal wrongdoing. (Docket No. 110.)

On April 14, 2016, a grand jury returned - in connection with the same alleged events - a Superseding Indictment, which charged the defendants with one count of Conspiracy to Defraud the United States (18 U.S.C. § 371), one count of Theft of Government Funds (18 U.S.C. § 641 and 2), one count of Conspiracy to Defraud by Wire (18 U.S.C. §§ 1343, 1349), eight counts of Fraud by Wire (18 U.S.C. § 1343 and 2), and four counts of Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1) and 2). (Docket No. 144.) Following the delivery of the Superseding Indictment, the counts contained in the Indictment were terminated.

On June 7, 2016, defendant Cruz filed his "Motion Requesting Grand Jury Minutes and Request for Dismissal of Superseding Indictment." (Docket No. 175.) The motion asks the Court: (1) to dismiss all charges contained in the Superseding Indictment as being time-barred, (2) to dismiss all charges contained in the Superseding Indictment based on the Government's "improper use of the grand jury proceedings," or, in the alternative, (3) either to disclose, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), the minutes of both the original and the second grand jury proceedings, or to review those minutes on its own *in*

*camera*.  <u>Id.</u>  On June 13, 2016, defendant Aponte moved the Court to join Cruz's motion, (Docket No. 176), and the Court granted his request, (Docket No. 177.)  Exactly one month later, Cruz filed a second motion for a bill of particulars, again seeking to compel from the Government a more detailed explanation of his alleged offenses.  (Docket No. 184.)  Defendant Aponte filed a motion to join Cruz's request for a bill of particulars, (Docket No. 186), which the Court granted, (Docket No. 188.)

## DISCUSSION

As a preliminary matter, the Court notes that the defendants' motions to dismiss the Indictment, as well as defendant Cruz's initial motion for a bill of particulars, have effectively been mooted by the filing of the Superseding Indictment and the accompanying termination of the charges contained in the Indictment.  Each of these motions is, therefore, **DISMISSED.** (Docket Nos. 63, 67, 72 & 110.)  The Court's sole focus moving forward will be on deciding the merits of defendant Cruz's: (1) motion to dismiss, or, in the alternative, request for grand jury minutes, and (2) second motion for a bill of particulars, (Docket Nos. 175 & 184), both of which have been joined by defendant Aponte.

## I.   Dismissal of All Charges for Untimeliness

Defendant Cruz first argues that all charges contained in the Superseding Indictment should be dismissed because they "were filed

after the applicable statute of limitations elapsed, and thus are time barred." (Docket No. 175 at p. 1.)  The Government maintains that the Superseding Indictment was in fact timely because the limitations period was tolled by the provisions of the Wartime Suspension of Limitations Act ("Suspension Act"), 18 U.S.C. § 3287.

**A.   The applicable statute of limitations**

The parties agree that the applicable statute of limitations in this case is found in 18 U.S.C. § 3282. That statute provides, in pertinent part, that: "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . .  within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a).

According to the Superseding Indictment, the alleged conspiracy terminated sometime in 2009. (Docket Nos. 3 & 144 at p. 5.) Thus, pursuant to 18 U.S.C. § 3282(a), the Government was required to obtain an indictment against the defendants sometime prior to the end of 2014. Because the Superseding Indictment was found in April 2016, the charges against Cruz and his co-defendants are presumptively time-barred.

A question remains, however, as to whether the Suspension Act effectively tolled the applicable statute of limitations, thereby safeguarding the timeliness of the charges contained in the Superseding Indictment.  The Court holds that it did.

   **B.    Tolling of the limitations period by the Suspension Act**

   **1.    The amended Suspension Act, which applies retroactively to the defendants' conduct, has been triggered and encompasses the charges contained in the Superseding Indictment**

The Suspension Act "provides an exception" to the five-year limitations period established in 18 U.S.C. § 3282(a). See U.S. v. Frediani, 790 F.3d 1196, 1200 (11th Cir. 2015). In 2007, when the events of the alleged conspiracy began, the Suspension Act stipulated, in relevant part, that:

> When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, . . . or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, [or] payment for . . . any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war . . . shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress.

18 U.S.C. § 3287 (2007). Thus, in 2007, the Suspension Act provided for the tolling of the limitations period with respect to three enumerated types of offenses if and when the nation was "at war." Effective October 14, 2008, however, Congress amended the Suspension Act through the Wartime Enforcement of Fraud Act of 2008 ("Fraud Enforcement Act"), Pub.L. No. 110-417, § 855. Among other things, the Fraud Enforcement Act amendment expanded the Suspension Act's triggering event to include times "[w]hen the United States

is at war *or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b))*."  18 U.S.C. § 3287 (change in italics).   Thus, following the enactment of the Fraud Enforcement Act, a specific authorization by Congress for the use of military force pursuant to the War Powers Resolution is an event that triggers the tolling provisions found in the Suspension Act.

On September 18, 2001, in the wake of the September 11 terrorist attacks, Congress issued exactly this type of authorization.  Entitled the "Authorization for Use of Military Force" ("Military Force Authorization Act"), the joint resolution empowered the President:

> to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Pub.L. 107-40, 115 Stat 224, § 2(a).  The resolution also expressly stated that it was "intended to constitute specific statutory authorization within the meaning of section 5(b) of the War Powers Resolution."  Id. § 2(b)(1).  Pursuant to the Military Force Authorization Act, the United States invaded Afghanistan in October 2001.  Later, on October 16, 2002, Congress issued another joint resolution authorizing the use of armed forces in Iraq.  Like the Military Force Authorization Act, this second resolution - labeled

the Authorization for Use of Military Force Against Iraq Resolution
of 2002 ("Iraq Force Authorization Act") - also indicated that it
was "intended to constitute specific statutory authorization within
the meaning of section 5(b) of the War Powers Resolution."  Pub.L.
107–243, 116 Stat 1498, § 3(c)(1).  Thus, between the Military
Force Authorization Act and the Iraq Force Authorization Act, the
Court finds that the tolling provisions of the amended Suspension
Act have been - and continue to be[1] - triggered.

        Of course, the mere triggering of the amended
Suspension Act is not, by itself, sufficient to toll the five-year
statute of limitations that applies to the defendants' alleged
conduct.  Rather, in order for the amended Suspension Act to have
tolled the limitations period for the charges contained in the
Superseding Indictment, those charges must fit into at least one of
the three distinct categories outlined in the Suspension Act

───────────────

        [1] As amended, the Suspension Act provides that only two
specific happenings can serve to terminate the hostilities
triggering the statute's tolling provisions.  The first is "a
Presidential proclamation, with notice to Congress," indicating
that those hostilities have ended, while the second is "a
concurrent resolution of Congress" specifying the same.  18
U.S.C.A. § 3287.  Because neither of these formal events has
transpired with respect to the hostilities in Iraq or Afghanistan,
the Court concludes that the Military Force Authorization Act and
the Iraq Force Authorization Act remain in effect today.  See,
e.g., Frediani, 790 F.3d at 1200-1201; U.S. v. Rodriguez-Colon,
2016 WL 3080778, at *3 (D.P.R. May 31, 2016) (Garcia-Gregory, J.);
U.S. v. Rivera-Rodriquez, 2016 WL 3774200, at *2 (D.P.R. July 12,
2016) (Gelpi, J.); U.S. v. Costas-Torres, 15-CR-00649, ECF No. 78
(D.P.R. July 21, 2016) (Delgado-Colon, C.J.).  Consequently, those
Congressional authorizations of military force continue to trigger
the tolling provisions contained in the Suspension Act.

itself.    As   highlighted   above,   those   categories   cover:
(1) offenses involving fraud against the United States government,
(2) offenses related to the personal or real property of the United
States government, and (3) offenses connected to war contracts.
See 18 U.S.C. § 3287.  Here, the defendants have been charged with
Conspiracy to Defraud the United States, Theft of Government Funds,
Conspiracy  to  Defraud  by  Wire,  Fraud  by  Wire,  and  Aggravated
Identity Theft.  See Docket No. 144.  These charges arguably fall
into  all  three  of  the  categorical  "bins"  contemplated  by  the
Suspension Act, especially since the Program bonus payments at the
heart of the alleged conspiracy were transferred pursuant to the
National Guard Bureau's contract with Docupak and are undoubtedly
considered the personal property of the United States.  See Dickman
v. C.I.R., 465 U.S. 330, 337 (1984) (acknowledging that money is a
type of personal property.)  Accordingly, the Court finds that the
charges  contained  in  the  Superseding  Indictment  are  indeed
encompassed by the Suspension Act.

        Finally, the Court must address the issue of whether
the amended Suspension Act applies retroactively to the defendants'
alleged conduct.  Because most - if not all - of the events set
forth in the indictments occurred prior to the October 2008 Fraud
Enforcement Act amendments, defendant Cruz argues that the effect
of those amendments should be ignored here.  See Docket No. 175 at
p. 5.  The Court, however, disagrees with this conclusion.  In

determining whether a statute should be applied retroactively, a court should begin its analysis by addressing "the initial question," which "involves the extent to which the legislature has spoken to the matter." Arevalo v. Ashcroft, 344 F.3d 1, 10 (1st Cir. 2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)). "In answering this question, courts should employ the customary rules of statutory construction, assaying the language of the statute itself and then considering its structure and purpose." Id. Here, the text of the amended Suspension Act does not expressly limit the temporal reach of its provisions. Nor does it indicate how it applies to antecedent conduct. The legislative history, however, indicates that Congress enacted the Fraud Enforcement Act amendments specifically to "mak[e] current law extending the statute of limitations during wartime applicable to the conflicts in Iraq and Afghanistan," both of which were in full swing by 2008. S. Rep. 110-431, at *2. The Senate report accompanying the amendment, for example, states:

> Now, more than five years after the start of the Iraq war and nearly seven years after the beginning of the Afghanistan war, the statute of limitations has started to bar criminal actions in investigations of contracting fraud early in these conflicts. This bill will allow additional time for investigators and auditors to thoroughly investigate and review all war contracts and potentially save the U.S. taxpayers untold millions of dollars. If the current law is left unchanged, each passing day of the conflicts in Iraq and Afghanistan would result in a grant of immunity for fraudulent conduct by war contractors that has gone undiscovered or unprosecuted during the conflicts.

Id. at *4.  In light of this clear expression of Congressional intent regarding the retroactivity of the 2008 Fraud Enforcement Act amendments, the Court finds that the amended Suspension Act applies to all of the defendants' conduct alleged in the Superseding Indictment.

Defendant Cruz maintains that applying the amended Suspension Act retroactively in these cases would violate the *Ex Post Facto* Clause of the United States Constitution.  See Docket No. 175 at pp. 8-9.  This argument, however, is misplaced.  "[I]n the criminal context, there is a consensus that extending a limitations period before prosecution is time-barred does not run afoul of the Ex Post Facto Clause of the Constitution."  Cruz v. Maypa, 773 F.3d 138, 145 (4th Cir. 2014) (collecting cases); see also U.S. v. Jeffries, 405 F.3d 682, 685 (8th Cir. 2005) ("The law is well settled that extending a limitations period before prosecution is barred does not violate the ex post facto clause."); U.S. v. Grimes, 142 F.3d 1342, 1351 (11th Cir. 1998) ("all of the circuits that have addressed the issue . . . have uniformly held that extending a limitations period before the prosecution is barred does not violate the Ex Post Facto Clause") (collecting cases); R. Brian Tanner, A Legislative Miracle:  Revival Prosecutions and the Ex Post Facto Clauses, 50 Emory L.J. 397, 406 (2001) ( "According to all the federal circuits that have reached the issue, as long as the prior statutory bar has not run, an

extension of that period is constitutional.") (collecting cases); cf. Stogner v. California, 539 U.S. 607 (2003) (holding that an *ex post facto* violation occurs when a statute of limitations extension revives an already time-barred prosecution).  Here, according to the Superseding Indictment, the defendants' alleged criminal conduct occurred between 2007 and 2009.  Pursuant to the applicable five-year statute of limitations - contained in 18 U.S.C. § 3282, as discussed above - the Government theoretically had until 2014 before prosecution of that conduct became time-barred.  The extension of the limitations period, however, occurred in October 2008, when Congress enacted the Fraud Enforcement Act amendments to the Suspension Act.  Because the limitations period was lengthened before any of the defendants' alleged offenses became time-barred, the *Ex Post Facto* Clause does not stop the Court from retroactively applying the Suspension Act's amended tolling provisions here.

In sum, the Court finds that the tolling provisions of the amended Suspension Act continue to be triggered by both the Military Force Authorization Act and the Iraq Force Authorization Act, that the charges against the defendants are of the kind covered by the text of the statute, and that the 2008 Fraud Enforcement Act amendments apply retroactively to the defendants' alleged conduct without producing an *ex post facto* issue.  Putting all the pieces together, then, the Court holds that the amended Suspension Act has effectively tolled the applicable limitations

period since at least October 2008, thereby ensuring the timeliness
of the Government's Superseding Indictment.  Accordingly, defendant
Cruz's motion to dismiss all charges against him on the basis of a
lapsed statute of limitations is appropriately **DENIED.**

## II.  Dismissal of All Charges for Abuse of Grand Jury Proceedings

Defendant Cruz also argues that dismissal of all charges in
the Superseding Indictment is appropriate because it is "patently
clear," in light of the "substantial changes" between the
Indictment and the Superseding Indictment, that the United States
made "improper use of the Grand Jury proceedings." (Docket No. 175
at pp. 12-13.)   The Government denies this accusation of
impropriety and maintains that the differences between the
indictments are a product of the legitimate exercise of its
prosecutorial discretion.  (Docket No. 194 at pp. 8-9.)

### A.  Standard

It is settled law within the First Circuit that grand
jury proceedings are entitled to a "presumption of regularity," In
re Lopreato, 511 F.2d 1150, 1152 (1st Cir. 1975), and that "a party
asserting a claim of grand jury abuse must shoulder a heavy burden"
to overcome that presumption.  U.S. v. Flemmi, 245 F.3d 24, 28 (1st
Cir. 2001).  "This presumption attaches even after the grand jury
has returned an initial indictment," especially since "superseding
indictments setting forth new charges or adding new defendants are
familiar fare."  Id.; see also United States v. Peña-Lora, 225 F.3d

17, 23 (1st Cir. 2000) (superseding indictment set forth new charges); United States v. Bender, 221 F.3d 265, 267 (1st Cir. 2000) (superseding indictment added two counts).

Despite this presumption of regularity, however, "prosecutors do not have carte blanche in grand jury matters." Flemmi, 245 F.3d at 28. It is widely recognized, for example, that it is improper for the Government to use the grand jury for the primary purpose of strengthening its case on a pending indictment or as a substitute for discovery. See, e.g., In re Grand Jury Proceedings, 814 F.2d 61, 70 (1st Cir. 1987) ("It is well established that a grand jury may not conduct an investigation for the primary purpose of helping the prosecution prepare indictments for trial."); U.S. v. Gibbons, 607 F.2d 1320, 1328 (10th Cir. 1979); Beverly v. United States, 468 F.2d 732, 743 (5th Cir. 1972); U.S. v. Woods, 544 F.2d 242, 250 (6th Cir. 1976).

There is "a fine line," however, "between an improper 'trial preparation' use of a grand jury and a proper 'continuing investigation' use." Flemmi, 245 F.3d at 28. Thus, "determining whether a prosecutor has overstepped [that line] will depend on the facts and circumstances of the particular case." Id. Nevertheless, certain "proxies" are available to help courts evaluate whether a grand jury is merely continuing the legitimate pursuit of other aspects of an investigation, or whether it is attempting to conduct discovery in a pending case. Id. For

example, when a grand jury's continued investigation results in the
filing of additional charges against a previously indicted
defendant, "the presumption of regularity generally persists." Id.

   **B.  Analysis**

        Defendant Cruz supports his claim of grand jury abuse by
pointing to several discrepancies between the original Indictment
and the Superseding Indictment.  He highlights, among other things:
(1) the modification of the starting day of the alleged events,
(2) the substitution of defendants on certain counts of wire fraud,
(3) the addition of a new count for the embezzlement of government
funds, and (4) the elimination of six overt acts in furtherance of
the alleged conspiracy, six alleged wire transmissions, six alleged
fraudulent recruiting referral bonuses, and three alleged instances
of identity theft.  See Docket No. 175 at pp. 13-20.  Cruz argues
that these variations "are indicative of a sequence of events that
demonstrate irregularities in the Grand Jury proceedings" and that
they definitively establish that the Government "improperly and
impermissibly used the second Grand Jury proceeding" both "to
strengthen the case they had already initiated with the original
indictment," and "for trial preparation."  (Docket No. 175 at
p. 24.)

        The Court, however, is not convinced that the subsequent
grand jury proceedings were "used for the sole purpose of fine
tuning the original indictment."  As indicated above, when a grand

jury's continued investigation leads to the filing of additional charges against a formerly indicted defendant, the presumption of regularity that attaches to grand jury proceedings generally prevails.   Here, although the Superseding Indictment dropped certain counts and tweaked various details contained in the initial Indictment, it also added a new charge of embezzlement against Cruz and his co-defendants.   While this charge pertains to the same bonus payments and the same alleged acts covered in the original Indictment, it ultimately requires the Government to prove a different set of elements.   This fact suggests that the Government's continued use of the grand jury was not intended primarily to strengthen its existing case against Cruz and his alleged cohorts, but rather to investigate further the full nature and extent of their conduct in order to ascertain whether a new

charge of embezzlement was in fact viable.[2]   In light of the
Government's decision to incorporate that additional charge into
its Superseding Indictment, the Court finds that the general
presumption of regularity that attaches to grand jury proceedings
should not be disturbed here.   Accordingly, defendant Cruz's
request to dismiss all charges contained in the Superseding
Indictment on the basis of grand jury abuse is **DENIED.**

### III. Release, or *In Camera* Review, of Grand Jury Minutes

Having determined that defendant Cruz is not entitled to
dismissal of all charges contained in the Superseding Indictment on
either of his asserted grounds, the Court must now address his
alternative request to have the grand jury minutes released so that

---

[2] Defendant Cruz argues that the addition of the embezzlement
charge should not defeat his claim of grand jury abuse because this
new charge "could have been brought forth with the factual
allegations in the original indictment." (Docket No. 175 at
p. 25.)   This argument, however, ignores the significant leeway
that prosecutors are afforded in their charging decisions.   As the
United States Supreme Court emphasized in U.S. v. Goodwin, 457 U.S.
368, 382 (1982):

> A prosecutor should remain free before trial to exercise
> the broad discretion entrusted to him to determine the
> extent of the societal interest in prosecution.   An
> initial decision should not freeze future conduct . . .
> [thus] the initial charges filed by a prosecutor may not
> reflect the extent to which an individual is legitimately
> subject to prosecution.

The Court finds that the United States was simply "exercis[ing]
proper and valid prosecutorial discretion" when it added the
additional embezzlement charge to the Superseding Indictment.

the defense can "ascertain the degree of prosecutorial misconduct in the proceedings." (Docket No. 175 at p. 26.)

**A.   Standard**

The United States Supreme Court has repeatedly recognized "that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." <u>Douglas Oil Co. of California v. Petrol Stops Nw.</u>, 441 U.S. 211, 218 (1979). This policy of grand jury secrecy is generally thought to advance several distinct and significant goals, including:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

<u>Id.</u> at 219 n. 10.  This secrecy remains important even after a grand jury has completed its functions.  <u>See</u> <u>Id.</u> at 222 ("[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.")

The rule of secrecy is not absolute, however. Pursuant to Federal Rule of Criminal Procedure 6(e) ("Rule 6(e)"), grand jury materials may be disclosed prior to trial. Rule

6(e)(3)(E)(ii) specifically permits a court to authorize disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). At the same time, however, the United States Supreme Court has consistently held that Rule 6(e) requires a party seeking disclosure of grand jury transcripts to make a strong showing of "particularized need" for those materials. See, e.g., Illinois v. Abbott & Associates, Inc., 460 U.S. 557, 567 (1983); Douglas Oil Co., 441 U.S. at 222; Dennis v. United States, 384 U.S. 855, 869-70 (1966); U.S. v. Procter & Gamble Co., 356 U.S. 677, 683 (1958). In other words, parties seeking disclosure must demonstrate "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil Co., 441 U.S. at 222. The United States Supreme Court has confirmed that "such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations." Id.

   **B. Analysis**

        Here, defendant Cruz argues that he has a particularized need to obtain disclosure of the grand jury minutes because the discrepancies between the original Indictment and the Superseding Indictment show that "perjury may have been committed by a witness

before the Grand Jury."[3]  (Docket No. 175 at pp. 26-27.)  Although
it is true that the Government cannot look to secure a conviction
based on perjured testimony, see U.S. v. Basurto, 497 F.2d 781, 785
(9th Cir. 1974) (holding that prosecutors have a "duty . . . not to
permit a person to stand trial when he knows that perjury permeates
the indictment"), the Court is not persuaded that Cruz's allegation
of perjury during the grand jury proceedings rests on anything more
than mere hypothesis and "fancy [sic] suspicions." (Docket No. 194
at p. 6.)  In essence, Cruz concludes that a witness is likely to
have offered false testimony based simply on the fact that the
Superseding Indictment tweaks certain details, drops certain
counts, and eliminates various paragraphs contained in the initial
Indictment.  Because his claim that the grand jury was deliberately
misled by perjured testimony does not rise above the speculative
level, Cruz has failed to make the required showing of
"particularized need" to merit disclosure of the grand jury minutes

---

    [3] Cruz also suggests that he has particularized need for the
disclosure of the grand jury minutes because the Government
utilized the second grand jury proceedings "in order to obtain more
information to strengthen their case against Cruz and his fellow
defendants."  (Docket No. 175 at p. 27.)  As explained above,
however, the Court rejects the argument that the second grand jury
was used by the United States solely to bolster its case on the
pending indictment.  Accordingly, Cruz's additional attempt to
demonstrate particularized need is rightly rebuffed.

pursuant to Rule 6(e).[4]  His specific request for that disclosure is therefore **DENIED**.

Cruz asks the Court, in the alternative to releasing the grand jury minutes, to review those minutes *in camera* "in order to determine the true use of the Grand Jury proceedings in the instant case." (Docket No. 175 at p. 28.)  In general, however, a party seeking judicial *in camera* review of grand jury materials must still establish particularized need for that review.  See, e.g., U.S. ex rel. Stone v. Rockwell Intern. Corp., 173 F.3d 757, 760 (10th Cir. 1999) ("Once the district court is satisfied that a particularized need has been articulated by counsel, the court shall, from its *in camera* review of the relevant grand jury testimony, determine where in the testimony the particularized need is supported; . . . [t]he district court shall state on the record, and with specificity, why the particularized need has been established . . . ."); see also Lucas v. Turner, 725 F.2d 1095, 1109 (7th Cir. 1984) (stating that plaintiffs must show particularized need for grand jury materials before the district court has an obligation to view those materials *in camera*.); U.S.

---

[4] This conclusion is further supported by the fact that Cruz's request for the disclosure of grand jury minutes is not "structured to cover only material so needed." Douglas Oil Co., 441 U.S. at 222.  On the contrary, Cruz seeks wholesale disclosure of all minutes from both the first and second grand jury proceedings. (Docket No. 175 at p. 13.)  The Court finds that this request is insufficiently tailored to justify disclosure pursuant to Rule 6(e).

v. Tidwell, 1996 WL 510086, at *2 (E.D.Pa. 1996) (allegations of
prosecutorial misconduct before indicting grand jury did not raise
particularized need so as to warrant *in camera* review of grand jury
materials).   Because Cruz has failed to make any showing of
particularized need for the disclosure of the grand jury minutes,
judicial review of those minutes *in camera* is also unwarranted
here.  Cruz's request for that action is therefore **DENIED.**

**IV.  Motion for a Bill of Particulars**

        Defendant Cruz also moves the Court for a bill of particulars.
Pursuant to his motion, Cruz seeks to compel the Government to
provide further details on the multiple charges filed against him
so that he may "have a real opportunity to prepare [his] defenses
to challenge and refute" those charges.  (Docket No. 184 at p. 2.)
The Government opposes Cruz's request, arguing that the Superseding
Indictment is "comprehensive, detailed, and sufficiently appraises
the defendant of the charges leveled against him with more than
adequate clarity to enable him to prepare his defense without the
element of surprise by the government."  (Docket No. 194 at p. 28.)
The requested bill of particulars, the Government maintains, is
"nothing but a discovery motion in disguise."  (Docket No. 194 at
p. 31.)

        **A.    Standard**

            "Motions for bills of particulars are seldom employed in
modern federal practice."  U.S. v. Sepulveda, 15 F.3d 1161, 1192

(1st Cir. 1993).  "When pursued, they need be granted only if the
accused, in the absence of a more detailed specification, will be
disabled from preparing a defense, caught by unfair surprise at
trial, or hampered in seeking the shelter of the Double Jeopardy
Clause."  Id. at 1192-93; see also U.S. v. Paiva, 892 F.2d 148, 154
(1st Cir. 1989) ("The purpose of a bill of particulars is to
provide the accused with detail of the charges against him where
necessary to enable him to prepare his defense, to avoid surprise
at trial, and to protect against double jeopardy.") (internal
citations omitted).  A bill of particulars "is not an investigative
tool for defense counsel 'to obtain a detailed disclosure of the
government's evidence prior to trial,'" U.S. v. Vazquez-Rijos, 250
F.R.D. 99, 100 (D.P.R. 2008) (quoting U.S. v. Kilrain, 566 F.2d
979, 985 (5th Cir. 1978)), and "[f]ederal trial courts have always
had very broad discretion in ruling upon requests for such bills .
. . ."  Will v. U.S., 389 U.S. 90, 98-99 (1967).

     B.   **Analysis**

          In the appendix attached to his motion, defendant Cruz
outlines the additional information and specifications that he
seeks to compel from the Government in order to mount his defense.
See Docket No. 184-1.  In brief, Cruz asks the Court to order the
Government to disclose a substantial number of supporting facts
missing from the Superseding Indictment, including - among many
other things - particularized details on how Cruz received the

Program bonus payments at issue, when he received them, and the precise amount that he received.  See Id. at p. 1.  Having reviewed the content of the Superseding Indictment, however, the Court concludes that Cruz is not entitled to these extra specifics.  The Superseding Indictment sets out the nature and elements of the criminal offenses with which Cruz has been charged and identifies the applicable criminal statutes.  With respect to the fraud and wire fraud conspiracy charges, it also furnishes a decent amount of information, including:  an approximate beginning and ending date of the alleged conspiracies; a concise summary of the object of those conspiracies; a fairly thorough description of the manner and means used to accomplish the object of those conspiracies; a chart listing the overt acts taken in furtherance of those conspiracies, complete with information on (1) the exact dates when the fraudulent Program bonus payments were transferred, (2) the amounts of those bonus payments, and (3) the accounts involved in those transactions; and the names, titles, and respective roles of the co-conspirators.  These details sufficiently apprise defendant Cruz of the charges against him.  They therefore enable him to prepare his defense, to avoid unfair surprise at trial, and to protect

himself against the threat of double jeopardy.[5]  A bill of particulars would only serve as an investigative vehicle for the defense further to discover the evidentiary theory underlying the Government's case.  Because a bill of particulars may not be employed for that purpose, Cruz's motion requesting that relief from the Court is properly **DENIED**.

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss all charges contained in the initial Indictment dated October 21, 2015 are **DISMISSED**, along with defendant Cruz's first motion for a bill of particulars.  (Docket Nos. 63, 67, 72 & 110.)  Cruz's motion seeking dismissal of all charges found in the Superseding Indictment dated April 14, 2016, or, in the alternative, the

---

[5] Although the indictments leave out certain details regarding the exact locations and times of the various acts of the conspiracy, this omission is not in itself sufficient to justify the granting of a bill of particulars here.  This finding is in line with the First Circuit Court of Appeals' observation that:

> "a conspiracy does not normally occur at only one particular time or place; it often takes shape and is carried out over a period of time, frequently in various locales.  A conspiracy may include several overt acts, but, as the government is not required to prove any of the particular acts constituting the conspiracy . . . the absence of a statement of the precise dates and locations of such acts does not necessarily render the indictment impermissibly vague."

U.S. v. Hallock, 941 F.2d 36, 41 (1st Cir. 1991) (internal citations omitted.)  See also, Paiva, 892 F.2d at 154-155 (confirming that a bill of particulars was not warranted where an indictment failed to include specific dates, times, and places of any particular act of the conspiracy).

Criminal No. 15-660 (FAB)                                              26

release or *in camera* review of grand jury minutes, is also **DENIED**,

(Docket No. 175), as is his second motion requesting a bill of

particulars, (Docket No. 184).

      **IT IS SO ORDERED.**

San Juan, Puerto Rico, December 20, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
United States District Judge
